# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THOMAS TRAINER, ROBERTO SANTANA, and CAASI PARR, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC. and VOLKSWAGEN AG,<br>     Defendants. | Case No. 2:15-cv-13692<br><br>Honorable<br><br>**CLASS ACTION COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Thomas Trainer, Roberto Santana, and Caasi Parr ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class" and the respective "Subclasses"), allege the following.

## I. FACTUAL ALLEGATIONS

1. The United States Government, through the Environmental Protection Agency, has passed and enforced laws designed to protect United States citizens from pollution and in particular, certain chemicals and agents known to cause disease in humans. Automobile manufacturers must abide by these US laws and must adhere to EPA rules and regulations. This case arises because Defendants Volkswagen Group of America, Inc., and Volkswagen AG (collectively, "Volkswagen" or "Defendants") purposefully and intentionally breached the laws

1

of the United States and the rules and regulations of the EPA by selling in the United States vehicles that purposefully evaded federal and state laws ("Affected Vehicles"). As stated by Cynthia Giles, Assistant Administrator for the Office of Enforcement and Compliance Assurance at the EPA: "Using a defeat device in cars to evade clean air standards is illegal and a threat to public health." Yet that is exactly what Volkswagen did in its 2009-2015 Volkswagen and Audi "CleanDiesel" vehicles.[1]

2.      As detailed in the EPA's Notice of Violation ("NOV"), sophisticated software in the Volkswagen and Audi diesel vehicles sold by Defendants in the United States detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test. But otherwise, that is at all other times that the vehicle is running, the emissions controls are suppressed. This results in cars that meet emissions standards in the laboratory or state testing station, but during normal operation emit nitrogen oxides (NOx) at up to 40 times the standard allowed under United States laws and regulations. The software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

3.      NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked with

---

[1] *See* Sept. 18, 2015 EPA News Release.

serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with preexisting respiratory illness are at acute risk of health effects from these pollutants.

4. The Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution. Every vehicle sold in the United States must be covered by an EPA issued certificate of conformity. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control system during normal driving conditions, cannot be certified. By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions that were certified to EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal law.

5. According the EPA NOV, Volkswagen installed its "defeat device" in at least the following diesel models of its vehicles (the "Affected Vehicles"): MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3. Discovery may reveal that

additional vehicle models and model years are properly included as Affected Vehicles.

6.    Volkswagen has charged a substantial premium for the Affected Vehicles, ironically marketed by Volkswagen as "CleanDiesel."  For example, for the 2015 Volkswagen Jetta, the base S model has a starting MSRP of $18,780. The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, a price premium of $2,860.  The CleanDiesel premium for the highest trim Jetta model is substantially higher: The highest level gas Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a staggering $6,315 premium.

7.    These premiums are found across all of the vehicles in which Volkswagen installed its "defeat device" for emissions testing.  The table below sets forth the price premium for each base, mid-level and top-line trim for each affected model:

**CleanDiesel Price Premiums**

| Model | Base | Mid-level | Top-line |
|---|---|---|---|
| VW Jetta | $2,860 | $4,300 | $6,315 |
| VW Beetle | $4,635 | n/a | $2,640 |
| VW Golf | $2,950 | $1,000 | $1,000 |
| VW Passat | $5,755 | $4,750 | $6,855 |
| Audi A3 | $2,805 | $3,095 | $2,925 |

4

8. Volkswagen's "CleanDiesel" vehicles also command higher prices in the used-care market.

9. Volkswagen has been ordered by the EPA to recall the Affected Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation. However, Volkswagen will not be able to make the Affected Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency. As a result, even if Volkswagen is able to make Class members' Affected Vehicles EPA-compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised. This will necessarily result in a diminution in value of every Affected Vehicle and it will cause owners of Affected Vehicles to pay more for fuel while using their Affected Vehicles.

10. As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Affected Vehicles emit 40 times the allowed levels of pollutants, owners and/or lessees of the Affected Vehicles have suffered losses in money and/or property. Had Plaintiffs and Class members known of the "defeat device" at the time they purchased or leased their Affected Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the

vehicles than they did. Moreover, when and if Volkswagen recalls the Affected Vehicles and degrades the CleanDiesel engine performance in order to make the Affected Vehicles compliant with EPA standards, Plaintiffs and Class members will be required to spend additional sums on fuel and will not obtain the performance characteristics of their vehicles when purchased. Moreover, Affected Vehicles will necessarily be worth less in the marketplace because of their decrease in performance and efficiency.

11. Plaintiffs bring this action individually and on behalf of all other current and former owners or lessees of Affected Vehicles in the United States. Plaintiffs also bring this action on behalf of all current and former owners or lessees of Affected Vehicles in the states of Michigan, New Jersey, and New York.

12. Plaintiffs seek damages, injunctive relief, and equitable relief for the conduct of Volkswagen related to the "defeat device," as alleged in this Complaint.

## II. JURISDICTION

13. This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14. This Court has personal jurisdiction over Defendant Volkswagen Group of America, Inc., because it conducts business in Michigan and has sufficient minimum contacts with Michigan.

15. This Court has specific jurisdiction over Volkswagen AG because it has purposefully availed itself of this forum by directing its agents and distributor, Volkswagen Group of America, Inc., to take action here.

16. Volkswagen AG is the sole owner of Volkswagen Group of America, Inc. It uses its agent, Volkswagen Group of America, Inc., to sell its cars in the United States. Not only does Volkswagen AG use its agent, Volkswagen Group of America, Inc., to perform this critical work, it also intimately directs the actions of Volkswagen Group of America, Inc., ranging from minute production line decisions to broad marketing strategies.

### III. VENUE

17. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, and because Defendants have caused harm to Class members residing in this District. One of the Named Plaintiffs resides in this District and purchased his Affected Vehicle in this District, and Volkswagen has marketed, advertised, sold, and leased the Affected Vehicles within this District.

7

## IV. PARTIES

**A.     Plaintiffs**

18.     Plaintiff **Thomas Trainer** is an individual residing in Troy, Oakland County, Michigan.

19.     In October 2010, Plaintiff Trainer purchased a new 2011 Volkswagen Jetta SportWagon "CleanDiesel" TDI from Ralph Thayer Volkswagen, an authorized Volkswagen dealer in Livonia, Michigan, for $29,542.94.  He still owns this vehicle.

20.     At the time of his purchase, Volkswagen's internet and print advertising touted the "CleanDiesel" feature, focusing on the promise of high fuel mileage and low emissions for a "CleanDiesel" model.

21.     Plaintiff Trainer did extensive research before purchasing his vehicle. He did not consider the purchase of a gasoline-powered car; rather he chose to pay extra for a diesel vehicle because of its fuel efficiency and low emissions, and he chose the 2011 Volkswagen Jetta SportWagon "CleanDiesel" TDI after comparing its advertised characteristics with those of other diesel vehicles and hybrids.

22.     None of the advertisements reviewed by Plaintiff Trainer contained any disclosure relating to the "defeat device," or to the fact that Volkswagen had purposefully falsified its certification of EPA compliance.

23.     Plaintiff Trainer believed he was purchasing a CleanDiesel vehicle. Had Volkswagen disclosed that the CleanDiesel in the vehicle actually emitted 40 times the permitted levels of pollutants, including NOx, Plaintiff Trainer would not have purchased his vehicle with the CleanDiesel engine.

24.     Plaintiff Trainer has suffered an ascertainable loss as a result of Volkswagen's omissions and/or misrepresentations associated with the CleanDiesel engine system, including but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, and diminished value of his vehicle.

25.     Plaintiff Trainer no longer wants to drive his vehicle because of the defeat device and the level of pollution the vehicle emits.  But he cannot hope to sell the vehicle at this point and receive a fair price for it because of the loss in value due to the defeat device scandal, leaving him in an impossible situation.

26.     Plaintiff **Roberto Santana** is an individual residing in Middle Island, Suffolk County, New York.

27.     In or around September of 2014, Plaintiff Santana purchased a 2009 VW Passat TDI "CleanDiesel" from NJS Auto Outlet, an authorized Volkswagen dealer in Selden, New York, for $12,495.  Plaintiff Santana still owns this vehicle.

28. At the time of his purchase, Volkswagen television and print advertisements touted the "CleanDiesel" feature and explained that there would not be the usual "dirty" emissions associated with diesel vehicles.

29. Unknown to Plaintiff Santana, at the time he purchased the vehicle, it was equipped with an emissions control "defeat device" which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit 40 times the allowed level of pollutants, including NOx.

30. The use of the "defeat device" by Volkswagen has caused Plaintiff Santana out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.

31. Volkswagen knew about and purposefully used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiff Santana, so Plaintiff Santana purchased his vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

32. Plaintiff Santana selected and ultimately purchased the vehicle primarily because of the "CleanDiesel" system, as represented through advertisements made by Volkswagen.

33.     Specifically, prior to his purchase of the vehicle, Plaintiff Santana viewed television and print advertisements regarding the "CleanDiesel" engine. He recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.

34.     None of the advertisements reviewed by Plaintiff Santana contained any disclosure relating to the "defeat device," or to the fact that Volkswagen had purposefully falsified its certification of EPA compliance.

35.     Plaintiff Santana believed he was purchasing a CleanDiesel vehicle. Had Volkswagen disclosed that the CleanDiesel in the vehicle actually emitted 40 times the permitted levels of pollutants, including NOx, Plaintiff Santana would not have purchased his vehicle with the CleanDiesel engine.

36.     Plaintiff Santana has suffered an ascertainable loss as a result of Volkswagen's omissions and/or misrepresentations associated with the CleanDiesel engine system, including but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, and diminished value of his vehicle.

37.     Plaintiff Santana's vehicle is currently inoperative for reasons that may or may not be related to the presence of the defeat device.  Plaintiff Santana's interest in repairing and driving his vehicle has greatly diminished because of the

11

defeat device and the level of pollution the vehicle emits.  But he cannot hope to sell the vehicle at this point and receive a fair price for it because of the loss in value due to the defeat device scandal, leaving him in an impossible situation.

38.    Plaintiff **Caasi Paar** is an individual residing in Jackson, Ocean County, New Jersey.

39.    In 2013, Plaintiff Parr purchased a used Volkswagen Jetta "CleanDiesel" TDI from Linden Volkswagen, an authorized Volkswagen dealer in Linden, New Jersey, for $17,000.  She still owns this vehicle.

40.    At the time of her purchase, Volkswagen's television and print advertising touted the "CleanDiesel" feature, focusing on the promise of high fuel mileage and the prospect of saving money in the long run despite the price premium for a "CleanDiesel" model.

41.    Unknown to Plaintiff Parr, at the time she purchased her vehicle, it was equipped with an emissions control "defeat device" which caused her vehicle to get an undue EPA certification and pass emissions tests, but at all other times emit 40 times the allowed level of pollutants, including NOx.

42.    The use of the "defeat device" by Volkswagen has caused Plaintiff Parr out-of-pocket loss, future attempted repairs, and diminished value of her vehicle.

43. Volkswagen knew about and purposefully used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiff Parr, so Plaintiff Parr purchased her vehicle on the reasonable, but mistaken, belief that the vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

44. Plaintiff Parr selected and ultimately purchased the vehicle primarily because of the "CleanDiesel" system, as represented through advertisements and representations made by Volkswagen.

45. Specifically, prior to her purchase of the vehicle, Plaintiff Parr viewed television and print advertisements regarding the CleanDiesel. She recalls that the advertisements touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.

46. None of the advertisements reviewed by Plaintiff Parr contained any disclosure relating to the "defeat device," or to the fact that Volkswagen had purposefully falsified its certification of EPA compliance.

47. Plaintiff Parr believed she was purchasing a CleanDiesel vehicle. Had Volkswagen disclosed that the CleanDiesel in her vehicle actually emitted 40 times the permitted levels of pollutants, including NOx, she would not have purchased her vehicle with the CleanDiesel engine.

13

48. Plaintiff Parr has suffered an ascertainable loss as a result of Volkswagen's omissions and/or misrepresentations associated with the CleanDiesel engine system, including but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, and diminished value of her vehicle.

49. Plaintiff Parr no longer wants to drive her vehicle because of the defeat device and the level of pollution the vehicle emits. But she cannot hope to sell the vehicle at this point and receive a fair price for it because of the loss in value due to the defeat device scandal, leaving her in an impossible situation.

50. Neither Volkswagen nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the "defeat device" and/or defective design of the CleanDiesel engine prior to purchase by any of the Plaintiffs or Class Members.

**B.    Defendants**

51. Volkswagen Group of America, Inc. ("Volkswagen") is a corporation doing business in all 50 states (including the District of Columbia) and is organized under the laws of the State of New Jersey, with its principal place of business located at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. At all times relevant to this action, Volkswagen manufactured, distributed, sold, leased, and warranted the Affected Vehicles under the Volkswagen and Audi brand names

throughout the United States.  Volkswagen and/or its agents designed, manufactured, and installed the CleanDiesel engine systems in the Affected Vehicles, which included the "defeat device."  Volkswagen also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Affected Vehicles.

52.    Volkswagen AG is the parent corporation and sole owner of Volkswagen Group of America, Inc.  Volkswagen AG is based in Germany and directly controls and directs the actions of Volkswagen Group of America, Inc., which acts as its agent in the United States.  As a result, this Court has specific jurisdiction over Volkswagen AG.

53.    At all relevant times, Volkswagen manufactured, distributed, sold, leased, and warranted the Affected Vehicles under the Volkswagen and Audi brand names throughout the nation.  Volkswagen and/or its agents designed the CleanDiesel engines and engine control systems in the Affected Vehicles, including the "defeat device."  Volkswagen also developed and disseminated the owners' manuals and warranty booklets, advertisements, and other promotional materials relating to the Affected Vehicles.

## V. TOLLING OF THE STATUTE OF LIMITATIONS

### A.     Discovery Rule Tolling

54.     Plaintiffs and Class Members had no way of knowing about Volkswagen's deception with respect to its CleanDiesel engine system and "defeat device." It took federal EPA and California Air Resources Board investigations to uncover Volkswagen's deception, which involved sophisticated software manipulation on Volkswagen's part. As reported by the Los Angeles Times on September 18, 2015, it took California Air Resources Board testing on a special dynamometer in a laboratory, open road testing using portable equipment, and the use of special testing devised by the Board to uncover Volkswagen's scheme and to detect how software on the engine's electronic control module was deceiving emissions certifications tests. Plainly, Volkswagen was intent on expressly hiding its behavior from regulators and consumers. This is the quintessential case for tolling.

55.     Within the time period of any applicable statutes of limitation, Plaintiffs and members of the proposed Class and Subclasses could not have discovered through the exercise of reasonable diligence that Volkswagen was concealing the conduct complained of herein and misrepresenting the Company's true position with respect to the emissions qualities of its vehicles.

16

56.     Plaintiffs and the other Class Members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Volkswagen did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Volkswagen had information in its possession about the existence of its sophisticated emissions scheme and that it opted to conceal that information, which was discovered by Plaintiffs only shortly before this action was filed. Nor in any event would such an investigation on the part of Plaintiffs and other Class Members have disclosed that Volkswagen valued profits over compliance with federal and state law, or the trust that Plaintiffs and other Class Members had placed in its representations, or that, necessarily, Volkswagen actively discouraged its personnel from raising or disclosing issues with regard to the true quality and quantity of the emissions, and the emissions software, of its vehicles, or of Volkswagen's emissions scheme.

57.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to all vehicles identified herein.

**B.      Fraudulent Concealment Tolling**

58.      All applicable statutes of limitation have also been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

59.      Instead of disclosing its emissions scheme, or that the quality and quantity of emissions from the subject vehicles were far worse than represented, and of its disregard of federal and state law, Volkswagen falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

**C.      Estoppel**

60.      Volkswagen was under a continuous duty to disclose to Plaintiffs and the other Class Members the true character, quality, and nature of emissions from the vehicles at issue, and of those vehicles' emissions systems, and of the compliance of those systems with applicable federal and state law.

61.      Volkswagen knowingly, affirmatively, and actively concealed the true nature, quality, and character of the emissions systems, and the emissions, of the vehicles at issue.

62.      Volkswagen was also under a continuous duty to disclose to Plaintiffs and the other Class Members that it had engaged in the scheme complained of herein to evade federal and state emissions and clean air standards, and that it

18

systematically devalued compliance with, and deliberately flouted, federal and state law regulating vehicle emissions and clean air.

63.   Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

## VI. FACTS

64.   Defendants intentionally designed, marketed, and sold cars in order to mislead consumers and regulators about the amount of pollution those cars created and the fuel efficiency they produced.   Despite touting themselves as an environmentally conscientious company that produced thoughtful cars for people who cared about the environment, Defendants sold expensive cars that produced pollution at orders of a magnitude above federal and state regulations, and then intentionally and knowingly hid the truth about those cars.

## A.   Defendants Tout Their Diesel Vehicles as Being Fuel Efficient and Good for the Environment

65.   For years, Volkswagen has advertised its diesel vehicles as low-emission, fuel-efficient cars.   Indeed, this marketing message is at the core of its image in the United States.   It has been a successful advertising campaign; Volkswagen has become the largest seller of diesel passenger vehicles in the United States.

66.   Defendants' success is based in large part on promoting their diesel cars as "clean" and "green" vehicles.   Indeed, being both highly efficient and

"clean" are the centerpieces of Defendants' diesel engine marketing campaign. "CleanDiesel" is in the very name of the vehicles about which Defendants lied.

67.    And Defendants continued to lie.  Although Volkswagen was aware of the recall and defect concerning the Affected Vehicles, it continued to mislead consumers in advertisements appearing on its webpage as recently as September 21, 2015.    These ads, pictured below, are rapidly being removed from Volkswagen's websites in an attempt to further hide its wrongdoing.  Defendants continued to represent the Affected Vehicles as "CleanDiesel" and that it "...has sold more diesel cars in the U.S. than every other brand combined.  Promise kept."



68.    Volkswagen's apparent concern for the environment is evident beyond just the model names and purported attributes of their vehicles.  For example, on the "Environment" page of its website, Volkswagen Group of America states that it takes "environmental responsibility very seriously.  When it

comes to making our cars as green as possible, Volkswagen has an integrated strategy focused on reducing fuel consumption and emissions, building the world's cleanest diesel engines and developing totally new power systems, which utilize new fuel alternatives."

69.   Volkswagen bolsters its apparent environmental bona fides by trumpeting the fact that the Audi A3 TDI and VW Jetta TDI were named the 2010 Green Car of the Year and the 2009 Green Car of the Year, respectively.

70.   As recently as September 21, 2015, Defendants continued to mislead consumers, touting the supposedly reduced greenhouse gas emission of its vehicles on its "CleanDiesel" webpage.  That misleading statement has since been removed.

71.   Defendants also launched a "Think Blue" program, which they explained is part of their policy of being "more responsible on the road and more environmentally conscious—not just in our cars."

72.   Beyond merely advertising, Defendants supported and directed a website to promote its "clean" diesel technology, www.clearlybetterdiesel.org, which says the technology reduces smog and "meets the highest standards in all 50 states, thanks to ultra-low sulfur diesel (ULSD) fuel and innovative engine technology that burns cleaner."

73.   Defendants go so far as to use the tagline "Truth in Engineering" to promote their Audi brand.

21

74.    Unfortunately for consumers who bought Defendants' cars and for people who breathe the air into which Defendants' cars emit extraordinary amounts of pollutants, Defendants engineering was far from "truthful."  Volkswagen has designed and sold cars that emit pollutants at breath-taking levels, failing state and federal environmental regulations by incredible margins.

**B.    Volkswagen Intentionally Hid
       Excessive and Illegal Levels of Pollution Emitted by Its Cars**

75.    The EPA's investigation of Volkswagen was prompted by a May 15, 2014, publication titled "In-Use Emissions Testing of Light-Duty Diesel Vehicles in the United States" by the Center for Alternative Fuels, Engines & Emissions (CAFEE) at West Virginia University ("the CAFEE Report").

76.    CAFFE was contracted by the International Council of Clean Transportation (ICCT) to conduct in-use testing of three light-duty diesel vehicles. According to the CAFEE Report, in the tested vehicles "real-world NOx emissions were found to exceed the US-EPA ... standard by a factor[s] of 5 to 35."

77.    Those findings show that, contrary to Volkswagen's self-promotion as a "green" company, its diesel cars are unhealthy and unlawful.

78.    On September 18, 2015, the EPA issued a Notice of Violation.  The NOV explains that Defendants have installed sophisticated software in the Volkswagen and Audi diesel vehicles sold by Defendants in the United States that detects when the vehicle is undergoing official emissions testing and turns full

22

emissions controls on only during the test. At all other times that the vehicle is running, however, the emissions controls are deactivated, meaning that pollution is freely released into the environment at levels that exceed those allowed by federal and state clean air regulators. This software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

79. Most modern engines, including Volkswagen's "CleanDiesel" engines, use computerized engine control systems to monitor sensors throughout a car's engine and exhaust systems and control operation of the car's systems to ensure optimal performance and efficiency. These functions can include controlling fuel injection, valve and ignition timing, and, as in Volkswagen's "CleanDiesel" engines, operating the engine's turbocharger. The engine control computer can, for example, ensure that the air-to-fuel mixture is correct based on sensor readings such as throttle position, amount of air flowing into the engine, and engine temperature.

80. These engine control computers also receive data from sensors in the car's exhaust system that measure the amounts of chemical substances included in the car's exhaust. That data provides a measure of the engine's operation and efficiency, and is thus used by the engine control computer in operating the car's systems to ensure the desired performance and efficiency.

81.    Because modern cars include these sophisticated computers and sensors throughout the car's systems, emissions testing sometimes uses a car's existing sensors to measure the presence of pollutants and track compliance with EPA and state emissions standards.  Emissions testing stations plug a diagnostic device into the car's on-board diagnostics ("OBD II") port and use the car's exhaust sensors during the testing procedure to measure the substances emitted. Some states, instead of or in addition to an OBD II diagnostic device, use a measurement probe inserted into the car's exhaust pipe to measure the chemicals emitted.

82.    Volkswagen programmed the engine control computers in the Affected Vehicles with software that detects when the cars are undergoing emissions testing, and then operates the car's engine and exhaust systems to ensure that emissions comply with EPA pollutant standards.  When the car is not being emissions tested—that is, under the vast majority of operating conditions—the engine control systems operate the vehicle in a manner that does not comply with EPA emissions requirements.

83.    In short, this software allows Defendants' diesel vehicles to meet emissions standards in labs or state testing stations while permitting the vehicles to emit nitrogen oxides (NOx) at up to 40 times the standard allowed under United States laws and regulations during the normal operation of the vehicles.

84.   As the journal Popular Mechanics reported, non-Volkswagen diesels commonly use urea injection to "neutralize" NOx emission, but those systems add weight and complexity to the engine.   "Everyone wondered how VW met emissions standards while foregoing urea injection.  As it turns out, they didn't.  It wasn't magical German engineering.  Just plain old fraud," the journal reported.

85.   NOx pollution contributes to higher atmospheric levels of nitrogen dioxide, ground-level ozone, and fine particulate matter.  Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital.  Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects.  Children, the elderly, and people with pre-existing respiratory illness are at an acute risk of health effects from these pollutants.

86.   The Clean Air Act has strict emissions standards for vehicles, and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution.  Every vehicle sold in the United States must be covered by an EPA-issued certificate of conformity.  Under federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control systems during normal driving conditions, cannot be certified.

87.    This is not the first time Volkswagen allegedly engineered vehicles to cheat emission standards.  As reported by the Los Angeles Times, Volkswagen paid a $120,000 fine to EPA in 1974 in order to settle charges that "it gamed pollution control systems in four models by changing carburetor settings and shutting off an emissions-control system at low temperatures."

88.    Volkswagen apparently did not learn from that experience.  By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions than were certified to the EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal laws.

## C.    Defendants Have Profited Handsomely from Their Diesel Vehicles

89.    Defendants charge and consumers pay substantial premiums for the Affected Vehicles.  For example, according to Defendants' website, for the 2015 Volkswagen Jetta, the base S model with a gasoline engine has a starting MSRP of $18,780.  The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, a price premium of $2,860.  The CleanDiesel premium compared to the highest trim Jetta models with a comparable four-cylinder turbocharged gasoline engine is substantially higher: The Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a 31% premium.

90. These premiums occur across all of the vehicles in which Defendants installed its "defeat device" for emissions testing, ranging from roughly $1,000 for a mid-tier Golf, to $2,900 for a base-level diesel Jetta, to nearly $7,000 for a top-line diesel Passat.

91. The EPA has ordered Defendants to recall the Affected Vehicles and repair them so that they comply with EPA emissions requirements. But that recall will not compensate Plaintiffs and the class for the significant harm Defendants' deception has caused. That is true for at least two reasons.

92. First, any repairs performed as part of the recall are likely to diminish the performance of the Affected Vehicles. Volkswagen will likely not be able to make those vehicles compliant with state and federal regulations without degrading performance, fuel efficiency, or both. That is so because any solution will likely involve reprogramming the Affected Vehicles' software to engage the emissions control equipment (which currently only operates when the vehicles are being emissions tested) at all times in a manner that reduces engine power and fuel economy to bring NOx emissions within legal limits. Plaintiffs' and Class Members' cars will therefore not perform as advertised.

93. Second, the recall cannot compensate for the financial damages Plaintiffs and Class Members have suffered, including the premium Plaintiffs' and Class Members paid for their "clean" diesel vehicles, the inevitable reduction in

27

resale value caused by the recall, and the increase in fuel expenses as the vehicles become less efficient following reprogramming.

94.    For those reasons, as a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Affected Vehicles emit 40 times the allowed levels, owners and/or lessees of the Affected Vehicles have suffered losses in money and/or property.

95.    Had Plaintiffs and Class Members known of the "defeat device" at the time they purchased or leased their Affected Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

96.    According to media sources, Volkswagen's recently ousted CEO, Martin Winterkorn, said in a statement that he was "deeply sorry that we have broken the trust of our customers and the public," and that Defendants would be suspending sales of some 2015 and 2016 vehicles with 2.0 liter diesel engines. While Defendants' candor about its breach of trust is notable, it cannot compensate Plaintiffs and Class Members for the damages they have incurred.

97.    In sum, Volkswagen's deliberate strategy to value profit over truth, human health, and the environment, has caused serious harm to consumers nationwide.

## VII. CLASS ALLEGATIONS

98.    Plaintiffs bring this action on behalf of themselves as individuals and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class and subclasses (collectively, the "Classes"):

### The Nationwide Class

*All persons or entities in the United States who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.*

### The Michigan Subclass

*All persons in the state of Michigan who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 20092015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.*

### The New Jersey Subclass

*All persons in the state of New Jersey who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 20092015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.*

### The New York Subclass

*All persons in the state of New York who are current or former owners and/or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY 20092015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.*

29

99.     Excluded from the Class and from each Subclass are individuals who have personal injury claims resulting from the "defeat device" in the CleanDiesel system.   Also excluded are Volkswagen and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class or Subclass; governmental entities; and the judge to whom this case is assigned and his/her immediate family.   Plaintiffs reserve the right to revise the Class and/or Subclass definition(s) based upon information learned through discovery.

100.   Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

101.   This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

102.   <u>Numerosity.</u>  Federal Rule of Civil Procedure 23(a)(1): The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.   While Plaintiffs are informed and believe that there are not less than hundreds of thousands of members of the Class, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Volkswagen's books and records.   Class members may be notified of the

30

pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

103. <u>Commonality and Predominance:</u> Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a.    Whether Volkswagen engaged in the conduct alleged herein;

    b.    Whether Volkswagen designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States;

    c.    Whether the CleanDiesel engine system in the Affected Vehicles contains a defect in that it does not comply with US EPA requirements;

    d.    Whether the CleanDiesel engine systems in Affected Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Affected Vehicles;

    e.    Whether Volkswagen knew about the "defeat device" and, if so, how long Volkswagen has known;

    f.    Whether Volkswagen designed, manufactured, marketed, and distributed Affected Vehicles with a "defeat device";

    g.    Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

    h.    Whether Plaintiffs and the other Class members overpaid for their Affected Vehicles;

i.      Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

j.      Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

104.    Typicality: Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

105.    Adequacy: Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously.  The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

106.    Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2): Volkswagen has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

107.    Superiority: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient

adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.   The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for Nationwide and Michigan Subclass members to individually seek redress for Volkswagen's wrongful conduct.   Even if Class members could afford individual litigation, the court system could not.   Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.   By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VIII. VIOLATIONS ALLEGED

**A.      Claims Brought on Behalf of the Nationwide Class**

### COUNT I
### FRAUD BY CONCEALMENT
### (Common Law)

108.    Plaintiffs incorporate by reference every allegation of this Complaint as if fully restated here.

109.    This claim is brought on behalf of the Nationwide Class.

110.  Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this complaint, notwithstanding references in the very model names of the subject vehicles as "CleanDiesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog.

111.  The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road.  The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings.  Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

112.  Plaintiffs and Nationwide Class members reasonably relied upon Volkswagen's false representations.  They had no way of knowing that Volkswagen's representations were false and gravely misleading.  As alleged herein, Volkswagen employed extremely sophisticated methods of deception.  Plaintiffs and Nationwide Class members did not, and could not, unravel Volkswagen's deception on their own.

113. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales about the trust that Plaintiffs and Nationwide Class members placed in its representations.

114. Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiffs and Nationwide Class members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations.

115. Volkswagen's false representations were material to consumers, both because they concerned the quality of the Affected Vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including

35

Plaintiffs and Nationwide Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

116. Volkswagen had a duty to disclose the emissions scheme it engaged in with respect to the vehicles at issue because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiffs or Nationwide Class members.

117. Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.

118. Having volunteered to provide information to Plaintiffs and the Class, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the

value of the Affected Vehicles purchased or leased by Plaintiffs and Nationwide Class members.

119. Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Volkswagen represented to Plaintiffs and Nationwide Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

120. Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Nationwide Class members.

121. On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Nationwide Class members by concealing material information regarding the emissions qualities of its referenced vehicles and its emissions scheme.

122. Plaintiffs and Nationwide Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Nationwide Class Members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Nationwide Class members.

123. Because of the concealment and/or suppression of the facts, Plaintiffs and Nationwide Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiffs and Nationwide Class members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and Class members who

38

purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

124. The value of Plaintiffs' and Nationwide Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Nationwide Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

125. Accordingly, Volkswagen is liable to Plaintiffs and Nationwide Class members for damages in an amount to be proven at trial.

126. Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Nationwide Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

127. Plaintiffs plead this count pursuant to the law of Virginia, where Volkswagen has its American headquarters, on behalf of all members of the Nationwide Class. As necessary, and in the alternative, Plaintiffs stand ready to plead sub-classes, based on the residences at pertinent times of members of the

Nationwide Class, to allege fraudulent concealment under the laws of states other than Virginia.

## COUNT II
## BREACH OF CONTRACT
### (Based on Common Law)

128.   Plaintiffs incorporate by reference every allegation of this Complaint as if fully restated here.

129.   Plaintiffs bring this Count on behalf of the Nationwide Class.

130.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the "defeat device" and/or defective design as alleged herein, caused Plaintiffs and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and the "defeat device."  Accordingly, Plaintiffs and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

131.   Each and every sale or lease of a Defeat Device Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached

these contracts by selling or leasing Plaintiffs and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the "defeat device" and/or defective design, including information known to Volkswagen rendering each Defeat Device Vehicle less safe and emissions compliant, and thus less valuable, than vehicles not equipped with CleanDiesel engine systems and "defeat devices."

132. As a direct and proximate result of Volkswagen's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III
## BREACH OF EXPRESS WARRANTY

133. Plaintiffs incorporate by reference every allegation of this Complaint as if fully restated here.

134. Plaintiffs bring a cause of action against Defendants for breach of express warranty on behalf of themselves and the Nationwide Class.

135. Defendants made numerous representations, descriptions, and promises to Plaintiffs and Class members regarding the performance and emission controls of its diesel vehicles.

136. For example, Volkswagen included in manuals for some or all of its Affected Vehicles the warranty that its vehicles were "designed, built and equipped

41

so as to conform at the time of sale with all applicable regulations of the United States Environmental Protection Agency," or similar language:



**Federal Emissions Control System Defect Warranty**

**For 2 years or 24,000 miles**

Volkswagen of America, Inc., an operating unit of Volkswagen Group of America, Inc. ("Volkswagen"), the authorized United States importer of Volkswagen vehicles, warrants to the original retail purchaser or original lessee for every **model year 2015** Volkswagen vehicle imported by Volkswagen:

- Was designed, built and equipped so as to conform at the time of sale with all applicable regulations of the United States Environmental Protection Agency (EPA), and
- Is free from defects in material and workmanship which causes the vehicle to fail to conform with EPA regulations for 2 years after the date of first use or delivery of the vehicle to the original retail purchaser or original lessee or until the vehicle has been driven 24,000 miles, whichever occurs first.

137. Volkswagen made similar representations that its emission systems complied with state law, for example:

> Volkswagen of America, Inc., an operating unit of Volkswagen Group of America, Inc. (Volkswagen), warrants to the original retail purchaser or original lessee and any subsequent purchaser or lessee that every **model year 2010** Volkswagen vehicle imported by Volkswagen and certified for sale and registered in California:
>
> - was designed, built and equipped so as to conform with all applicable requirements of the California Air Resources Board ("CARB") and

138. Defendants, however, knew or should have known that their representations, descriptions, and promises were false. Defendants were aware that they had installed defeat devices in the vehicles they sold to Plaintiffs and Class members.

139. Plaintiffs and Class members reasonably relied on Volkswagen's representations in purchasing "clean" diesel vehicles. Those vehicles, however, did not perform as was warranted. Unbeknownst to Plaintiffs, those vehicles included devices that caused their emission reduction systems to perform at levels worse than advertised. Those devices are defects. Accordingly, Volkswagen breached its express warranty by providing a product containing defects that were never disclosed to the Plaintiffs and Class members.

140. As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiffs and Class members suffered significant damages and seek the relief described below.

## COUNT IV
## BREACH OF IMPLIED WARRANTY

141. Plaintiffs incorporate by reference every allegation of this Complaint as if fully restated here.

142. Plaintiffs bring this cause of action against Volkswagen for breach of implied warranty on behalf of themselves and the Nationwide Class.

143. Volkswagen made numerous representations, descriptions, and promises to Plaintiffs and Class members regarding the functionality of Volkswagen's "clean" diesel technology.

144. Plaintiffs and Class members reasonably relied on Volkswagen's representations in purchasing the Affected Vehicles.

43

145. As set forth throughout this Complaint, Volkswagen knew that its representations, descriptions, and promises regarding its diesel engines were false.

146. When Plaintiffs and Class members purchased Volkswagen's diesel vehicles, they did not conform to the promises or affirmations of fact made in Volkswagen's promotional materials, including that the vehicles were designed to meet the most demanding environmental standards.  Instead, as alleged above, those vehicles were designed to cheat those standards, and the vehicles emitted far higher levels of pollution than promised.

147. Accordingly, the Affected Vehicles failed to conform to Volkswagen's implied warranty regarding their functionality.

148. As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiffs and Class members suffered significant injury when Volkswagen sold them cars that, it is now clear, are worth far less than the price Plaintiffs and Class members paid for them.  Accordingly, Plaintiffs and the Class seek the relief described below.

**COUNT V**
**IMPLIED AND WRITTEN WARRANTY**
**Magnuson–Moss Act (15 U.S.C. §§ 2301, *et seq.*)**

149. Plaintiffs incorporate by reference every allegation of this Complaint as if fully restated here.

150. Plaintiffs assert this cause of action on behalf of themselves and the Nationwide Class.

151. This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 15 U.S.C. § 2310(d).

152. Volkswagen's Affected Vehicles are a "consumer product," as that term is defined in 15 U.S.C. § 2301(1).

153. Plaintiffs and Class members are "consumers," as that term is defined in 15 U.S.C. § 2301(3).

154. Volkswagen is a "warrantor" and "supplier" as those terms are defined in 15 U.S.C. § 2301(4) and (5).

155. A cause of action is provided by 15 U.S.C. § 2310(d)(1) for any consumer damaged by the failure of a warrantor to comply with an implied or written warranty.

156. As described herein, Volkswagen provided Plaintiffs and Class members with "implied warranties" and "written warranties" as those term are defined in 15 U.S.C. § 2301.

157. Volkswagen has breached these warranties as described in more detail above. Without limitation, Volkswagen's Affected Vehicles are defective, as described above, which resulted in the problems and failures also described above.

45

158. By Volkswagen's conduct as described herein, including Volkswagen's knowledge of the defects inherent in the vehicles and its action, and inaction, in the face of the knowledge, Volkswagen has failed to comply with its obligations under its written and implied promises, warranties, and representations.

159. In its capacity as a warrantor, and by the conduct described herein, any attempts by Volkswagen to limit the implied warranties in a manner that would exclude coverage of the defective software and systems is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective the software and supporting systems is null and void.

160. All jurisdictional prerequisites have been satisfied.

161. Plaintiffs and members of the Class are in privity with Volkswagen in that they purchased the software from Volkswagen or its agents.

162. As a result of Volkswagen's breach of warranties, Plaintiffs and Class members are entitled to revoke their acceptance of the vehicles, obtain damages and equitable relief, and obtain costs pursuant to 15 U.S.C. § 2310.

## COUNT VI
## UNJUST ENRICHMENT

163. Plaintiffs incorporate by reference every allegation of this Complaint as if fully restated here.

164. Plaintiffs bring this count on behalf of themselves and the Nationwide Class.

46

165.     Plaintiffs and members of the Class conferred a benefit on Defendants by, inter alia, using (and paying for) its vehicles.

166.     Defendants have retained this benefit, and know of and appreciate this benefit.

167.     Defendants were and continue to be unjustly enriched at the expense of Plaintiffs and Class members.

168.     Defendants should be required to disgorge this unjust enrichment.

**B.      Claims Brought on Behalf of the Michigan Subclass**

**COUNT VII**
**VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT**
**(Mich. Comp. Laws § 445.901, *et seq*.)**

169.     Plaintiffs incorporate by reference every allegation of this Complaint as if fully restated here.

170.     Plaintiffs bring this Count on behalf of the members of the Michigan Subclass.

171.     The Michigan Consumer Protection Act ("MCPA" or "Act") protects consumers from "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce."  Mich. Comp. Laws § 445.903.

172.     Plaintiffs and Michigan Subclass Members are persons under the Act. *Id.*, § 445.902(d).

173. Defendants engage in trade or commerce as defined by the Act by designing, marketing, and selling diesel vehicles in Michigan and elsewhere. *Id.*, § 445.902(g).

174. As described herein, in designing, marketing, and selling Affected Vehicles, Defendants engaged in unlawful methods, acts, or practices in trade or commerce in violation of the MCPA.

175. Specifically, Defendants represented that their vehicles were environmentally responsible, low-emissions "CleanDiesel" vehicles— characteristics and benefits that the Affected Vehicles did not actually have, in violation of Mich. Comp. Laws § 445.903(c).

176. By concealing their use of defeat devices in the Affected Vehicles, Defendants also failed "to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer," in violation of Mich. Comp. Laws § 445.903(s).

177. By touting the supposed environmental benefits of their "CleanDiesel" vehicles while concealing their use of defeat devices in the Affected Vehicles, Defendants also made "a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is," in violation of Mich. Comp. Laws § 445.903(bb).

178. By touting the supposed environmental benefits of their "CleanDiesel" vehicles while concealing their use of defeat devices in the Affected Vehicles, Defendants also failed "to reveal facts that are material to the transaction in light of representations of fact made in a positive manner," in violation of Mich. Comp. Laws § 445.903(cc).

179. Defendants' unlawful acts were not authorized by any law or regulation; no law permits designing, manufacturing, and selling or leasing vehicles with "defeat devices" intentionally engineered to cheat regulatory requirements.

180. As a result of Defendants' unlawful conduct, Plaintiffs and Michigan Subclass Members have suffered losses: they paid a premium for vehicles that do not perform as advertised, and those vehicles are now worth substantially less due to the recall.

181. Plaintiffs and Michigan Subclass Members request treble damages in an amount to be proven at trial, plus interest, costs, and attorneys' fees.

182. Plaintiffs and Michigan Subclass Members also request that Defendants be required to bear the cost of any notice to the Class, pursuant to Mich. Comp. Laws § 445.911(5).

## COUNT VIII
## VIOLATION OF THE MICHIGAN SHOPPING REFORM AND MODERNIZATION ACT (Mich. Comp. Laws § 445.315)

183.   Plaintiffs incorporate by reference every allegation of this Complaint as if fully restated here.

184.   Plaintiffs bring this claim on behalf of the Michigan Subclass.

185.   By advertising the polluting Affected Vehicles as "CleanDiesel," and making other representations of fuel efficiency and performance, Defendants knowingly made, published, disseminated, circulated, and placed before the public advertisements that contained untrue, deceptive, and misleading statements and representations, in violation of Mich. Comp. Laws § 445.315(1).

186.   Defendants failed to sell the Affected Vehicles in the manner advertised, which creates a rebuttable presumption of an intent to violate the Michigan Shopping Reform and Modernization Act pursuant to Mich. Comp. Laws § 445.315(2).

187.   Defendants' advertisements of its "CleanDiesel" vehicles failed to reveal that defeat devices were installed in the vehicles—a material fact in light of Defendants' promotion of its vehicles as low-emissions, high-performance products—and were therefore deceptive and misleading within the meaning of Mich. Comp. Laws § 445.315(3).

188. As a result of Defendants' unlawful conduct, Plaintiffs and Michigan Subclass Members have suffered losses: they paid a premium for vehicles that do not perform as advertised, and those vehicles are now worth substantially less due to the recall.

189. Plaintiffs and Michigan Subclass Members request actual damages in an amount to be proven at trial, or $250.00, whichever is greater, per violation per day, plus interest, costs, and attorneys' fees, pursuant to Mich. Comp. Laws § 445.322(2).

## COUNT IX
## BREACH OF CONTRACT
## (BASED ON MICHIGAN LAW)

190. Plaintiffs incorporate by reference every allegation of this Complaint as if fully restated here.

191. Plaintiffs bring this Count on behalf of the members of the Michigan Subclass.

192. Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and Michigan Subclass Members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and Michigan Subclass Members would not have purchased or leased these Affected Vehicles,

51

would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and Michigan Subclass Members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

193. Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiff and Michigan Subclass Members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

194. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and Michigan Subclass Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT X
## FRAUDULENT CONCEALMENT
## (BASED ON MICHIGAN LAW)

195.    Plaintiffs incorporate by reference every allegation of this Complaint as if fully restated here.

196.    Plaintiffs bring this Count on behalf of the members of the Michigan Subclass.

197.    Volkswagen intentionally concealed that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device," or acted with reckless disregard for the truth, and denied Plaintiffs and Michigan Subclass Members information that is highly relevant to their purchasing decision.

198.    Volkswagen further affirmatively misrepresented to Plaintiffs and Michigan Subclass Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling were new, had no significant defects, complied with EPA regulations and would perform and operate properly when driven in normal usage.

199.    Volkswagen knew these representations were false when made.

200.    The Affected Vehicles purchased or leased by Plaintiffs and Michigan Subclass Members were, in fact, defective, non-EPA compliant, unsafe, and unreliable because the Affected Vehicles contained faulty and defective CleanDiesel engine system, as alleged herein.

53

201. Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant and unreliable in that certain crucial emissions functions of the Affected Vehicles would be rendered inoperative due to the "defeat device" installed in the defective CleanDiesel engine system, because Plaintiffs and Michigan Subclass Members relied on Volkswagen's material representations that the Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

202. The aforementioned concealment was material because if it had been disclosed Plaintiffs and Michigan Subclass Members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

203. The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements. Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

204. Plaintiffs and Michigan Subclass Members relied on Volkswagen's reputation — along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance

54

that its Affected Vehicles were safe and reliable, and complied with environmental regulations — in purchasing or leasing Volkswagen's Affected Vehicles.

205. As a result of their reliance, Plaintiffs and Michigan Subclass Members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

206. Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members. Plaintiffs and Michigan Subclass Members are therefore entitled to an award of punitive damages.

**C.      Claims Brought on Behalf of the New Jersey Subclass**

**COUNT XI**
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**
**(N.J.S.A. 56:8-1 *et seq.*)**
**(Brought on Behalf of the New Jersey Subclass)**

207. Plaintiffs incorporate by reference every allegation of this Complaint as if fully restated here.

208. Plaintiffs bring this Count on behalf of the members of the New Jersey Subclass.

209. The New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 *et seq.*) ("NJCFA") states, in relevant part:

any unconscionable commercial practice, deception, fraud, false

pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise…is declared to be an unlawful practice. N.J.S.A. 56:8-2.

210.   Plaintiff and New Jersey Subclass Members are consumers who purchased and/or leased Affected Vehicles for personal, family, or household use.

211.   The advertisement, promotion, distribution, supply, sale, or lease of the Affected Vehicles is a "sale or advertisement" of "merchandise" governed by the NJCFA.

212.   Prior to Plaintiff's and New Jersey Subclass Members' purchase of the Affected Vehicles, Volkswagen violated the NJCFA by making:

a.   uniform representations that its diesel vehicles were of a particular standard, quality, or grade when they were and are not, and that they would perform as represented when they did not, as set forth above; and

b.   false and/or misleading statements about the capacity and characteristics of the Affected Vehicles, as set forth above, that were unfair, deceptive, or otherwise fraudulent, had and continue to have the capacity to, and did, deceive the public and cause injury to Plaintiff and New Jersey Subclass Members.

213.   Volkswagen, in its communications with and disclosures to the Plaintiff and New Jersey Subclass Members, intentionally concealed or otherwise failed to disclose that the Affected Vehicles included a software program designed to cheat emissions testing, that the true emissions of those vehicles were far higher

than claimed, and that the vehicles were incapable of achieving the advertised combination of low emissions, high performance, and fuel efficiency.

214. Plaintiff and New Jersey Subclass Members reasonably expected that the Affected Vehicles complied with the represented and claimed emissions both prior to and at the time of purchase, and reasonably expected that Volkswagen did not use software or any other device or system to cheat emissions testing. These representations and affirmations of fact made by Volkswagen, and the facts it concealed or failed to disclose, are material facts that were likely to deceive reasonable consumers, and that reasonable consumers would, and did, rely upon in deciding whether or not to purchase or lease an Affected Vehicle. Moreover, Volkswagen intended for consumers, including Plaintiff and New Jersey Subclass Members, to rely on these material facts.

215. Volkswagen had exclusive knowledge that the Affected Vehicles had and have the defects set forth above which gave rise to a duty to disclose these facts. Volkswagen breached that duty by failing to disclose these material facts.

216. The injury to consumers by this conduct greatly outweighs any alleged countervailing benefits to consumers or competition under all circumstances. There is a strong public interest in reducing emission levels, as well as truthfully advertising emission levels.

217. Had Plaintiff and New Jersey Subclass Members known about Volkswagen's use of the defeat device, and/or that the Affected Vehicles did not comply with Volkswagen's advertised emissions and did not operate as advertised, they would not have purchased and/or leased the Affected Vehicles or would have paid less than they did for them.

218. Plaintiffs and New Jersey Subclass Members have suffered injury, including the loss of money or property, as a result of Volkswagen's false advertising. In purchasing or leasing their Affected Vehicles, Plaintiffs and New Jersey Subclass Members relied on the misrepresentations and/or omissions of Volkswagen with respect to the safety, quality, functionality, and reliability of the Affected Vehicles. Volkswagen's representations turned out to be untrue because the CleanDiesel engine system installed in Affected Vehicles did not comply with EPA regulations. Had Plaintiffs and New Jersey Subclass Members known this, they would not have purchased or leased their Affected Vehicles and/or paid as much for them.

219. Accordingly, Plaintiffs and New Jersey Subclass Members overpaid for their Affected Vehicles and did not receive the benefit of the bargain for their Affected Vehicles, which have also suffered diminution in value.

220. Plaintiffs, individually and on behalf of New Jersey Subclass Members, request that this Court enter such orders or judgments as may be

necessary to enjoin Volkswagen from continuing its unfair, unlawful and/or deceptive practices. Plaintiffs and New Jersey Subclass Members are also entitled to recover their actual damages and, because Volkswagen acted willfully or knowingly, Plaintiffs and New Jersey Subclass Members are entitled to recover three times their actual damages, together with attorney's fees and costs.

## COUNT XII
## BREACH OF CONTRACT
## (BASED ON NEW JERSEY LAW)

221.   Plaintiffs incorporate by reference every allegation of this Complaint as if fully restated here.

222.   Plaintiffs bring this Count on behalf of the members of the New Jersey Subclass.

223.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and New Jersey Subclass Members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and New Jersey Subclass Members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as

59

including such a system. Accordingly, Plaintiff and New Jersey Subclass Members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

224.   Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiff and New Jersey Subclass Members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

225.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and New Jersey Subclass Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT XIII
## FRAUDULENT CONCEALMENT
## (BASED ON NEW JERSEY LAW)

226.   Plaintiffs incorporate by reference every allegation of this Complaint as if fully restated here.

227. Plaintiffs bring this Count on behalf of the members of the New Jersey Subclass.

228. Volkswagen intentionally concealed that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device," or acted with reckless disregard for the truth, and denied Plaintiffs and New Jersey Subclass Members information that is highly relevant to their purchasing decision.

229. Volkswagen further affirmatively misrepresented to Plaintiffs and New Jersey Subclass Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling were new, had no significant defects, complied with EPA regulations and would perform and operate properly when driven in normal usage.

230. Volkswagen knew these representations were false when made.

231. The Affected Vehicles purchased or leased by Plaintiffs and New Jersey Subclass Members were, in fact, defective, non-EPA compliant, unsafe, and unreliable because the Affected Vehicles contained faulty and defective CleanDiesel engine system, as alleged herein.

232. Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant and unreliable in that certain crucial emissions functions of the Affected Vehicles would be rendered inoperative due to the "defeat device" installed in the defective CleanDiesel engine system, because

61

Plaintiffs and New Jersey Subclass Members relied on Volkswagen's material representations that the Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

233. The aforementioned concealment was material because if it had been disclosed Plaintiffs and New Jersey Subclass Members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

234. The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements. Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

235. Plaintiffs and New Jersey Subclass Members relied on Volkswagen's reputation — along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable, and complied with environmental regulations — in purchasing or leasing Volkswagen's Affected Vehicles.

236. As a result of their reliance, Plaintiffs and New Jersey Subclass Members have been injured in an amount to be proven at trial, including, but not

62

limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

237.   Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members. Plaintiffs and New Jersey Subclass Members are therefore entitled to an award of punitive damages.

**D.    Claims Brought on Behalf of the New York Subclass**

### COUNT XIV
### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (N.Y. GEN. BUS. LAW § 349)

238.   Plaintiffs incorporate by reference every allegation of this Complaint as if fully restated here.

239.   Plaintiffs bring this Count on behalf of the members of the New York Subclass.

240.   New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

241.   In the course of Volkswagen's business, it willfully failed to disclose and actively concealed that the CleanDiesel engine system was non-EPA compliant, and the use of the "defeat device" in Affected Vehicles as described above. Accordingly, Volkswagen engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as

defined in N.Y. Gen. Bus. Law § 349, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

242. Volkswagen's actions as set forth above occurred in the conduct of trade or commerce in New York State and elsewhere.

243. Because Volkswagen's deception takes place in the context of automobile safety, its deception affects the public interest. Further, Volkswagen's unlawful conduct constitutes unfair acts or practices that have the capacity to deceive consumers, and that have a broad impact on consumers at large.

244. Volkswagen's conduct proximately caused injuries to Plaintiffs and New York Subclass Members.

245. Plaintiffs and New York Subclass Members were injured as a result of Volkswagen's conduct in that Plaintiffs and New York Subclass Members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Volkswagen's misrepresentations and omissions.

## COUNT XV
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350
## (N.Y. GEN. BUS. LAW § 350)

246.   Plaintiffs incorporate by reference every allegation of this Complaint as if fully restated here.

247.   Plaintiffs bring this Count on behalf of the members of the New York Subclass.

248.   New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]" False advertising includes "advertising, including labeling, of a commodity ... if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of ... representations [made] with respect to the commodity...." N.Y. Gen. Bus. Law § 350-a.

249.   Volkswagen caused to be made or disseminated throughout New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Volkswagen, to be untrue and misleading to consumers, including Plaintiffs and New York Subclass Members.

250.   Volkswagen has violated N.Y. Gen. Bus. Law § 350 because the misrepresentations and omissions regarding that the CleanDiesel engine system was non-EPA compliant, and the use of the "defeat device" in Affected Vehicles as

described above, as well as the inherently defective nature of the CleanDiesel engine system as designed and sold by Volkswagen, were material and likely to deceive a reasonable consumer.

251.  Plaintiffs and New York Subclass Members have suffered injury, including the loss of money or property, as a result of Volkswagen's false advertising. In purchasing or leasing their Affected Vehicles, Plaintiffs and New York Subclass Members relied on the misrepresentations and/or omissions of Volkswagen with respect to the safety, quality, functionality, and reliability of the Affected Vehicles. Volkswagen's representations turned out to be untrue because the CleanDiesel engine system installed in Affected Vehicles did not comply with EPA regulations.  Had Plaintiffs and New York Subclass Members known this, they would not have purchased or leased their Affected Vehicles and/or paid as much for them.

252.  Accordingly, Plaintiffs and New York Subclass Members overpaid for their Affected Vehicles and did not receive the benefit of the bargain for their Affected Vehicles, which have also suffered diminution in value.

253.  Plaintiffs, individually and on behalf of New York Subclass Members, request that this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing its unfair, unlawful and/or deceptive practices. Plaintiffs and New York Subclass Members are also entitled to

recover their actual damages or $50, whichever is greater. *See* N.Y. Gen. Bus. Law § 349.  Because Volkswagen acted willfully or knowingly, Plaintiffs and New York Subclass Members are entitled to recover three times their actual damages, up to $1,000, together with reasonable attorney's fees.  *Id.*

## COUNT XVI
## BREACH OF CONTRACT
## (BASED ON NEW YORK LAW)

254.    Plaintiffs incorporate by reference every allegation of this Complaint as if fully restated here.

255.    Plaintiffs bring this Count on behalf of the members of the New York Subclass.

256.    Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the CleanDiesel engine system's defect and/or defective design as alleged herein, caused Plaintiff and New York Subclass Members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and New York Subclass Members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and New York Subclass Members

overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

257. Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiff and New York Subclass Members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design, including information known to Volkswagen rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with a CleanDiesel engine system.

258. As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and New York Subclass Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT XVII
## FRAUDULENT CONCEALMENT
## (BASED ON NEW YORK LAW)

259. Plaintiffs incorporate by reference every allegation of this Complaint as if fully restated here.

260. Plaintiffs bring this Count on behalf of the members of the New York Subclass.

261. Volkswagen intentionally concealed that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device," or acted with reckless disregard for the truth, and denied Plaintiffs and New York Subclass Members information that is highly relevant to their purchasing decision.

262. Volkswagen further affirmatively misrepresented to Plaintiffs and New York Subclass Members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling were new, had no significant defects, complied with EPA regulations and would perform and operate properly when driven in normal usage.

263. Volkswagen knew these representations were false when made.

264. The Affected Vehicles purchased or leased by Plaintiffs and New York Subclass Members were, in fact, defective, non-EPA compliant, unsafe, and unreliable because the Affected Vehicles contained faulty and defective CleanDiesel engine system, as alleged herein.

265. Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant and unreliable in that certain crucial emissions functions of the Affected Vehicles would be rendered inoperative due to the "defeat device" installed in the defective CleanDiesel engine system, because

Plaintiffs and New York Subclass Members relied on Volkswagen's material representations that the Affected Vehicles they were purchasing were safe, environmentally clean, efficient and free from defects.

266. The aforementioned concealment was material because if it had been disclosed Plaintiffs and New York Subclass Members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

267. The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions requirements. Volkswagen intentionally made the false statements in order to sell Affected Vehicles.

268. Plaintiffs and New York Subclass Members relied on Volkswagen's reputation — along with Volkswagen's failure to disclose the faulty and defective nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable, and complied with environmental regulations — in purchasing or leasing Volkswagen's Affected Vehicles.

269. As a result of their reliance, Plaintiffs and New York Subclass Members have been injured in an amount to be proven at trial, including, but not

limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

270. Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and New York Subclass Members. Plaintiffs and New York Subclass Members are therefore entitled to an award of punitive damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Nationwide Class and Michigan Subclass, respectfully request that the Court enter judgment in their favor and against Volkswagen, as follows:

a. Certification of the proposed Nationwide Class, Michigan Subclass, New Jersey Subclass, and New York Subclass, including appointment of Plaintiffs' counsel as Class Counsel;

b. An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

c. Injunctive relief in the form of a recall or free replacement program;

d. Costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

e. An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

f. An award of costs and attorneys' fees; and

g. Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.


Dated: October 19, 2015

Respectfully submitted,

JTB LAW GROUP, LLC

By: */s/ Jason T. Brown*
Jason T. Brown (*will seek PHV admission*)
Patrick S. Almonrode (*will seek PHV admission*)
155 2nd Street, Suite 4
Jersey City, NJ  07302
(877) 561-0000
jtb@jtblawgroup.com
patalmonrode@jtblawgroup.com


THE LAW OFFICES OF BRYAN YALDOU, PLLC
Bryan Yaldou
23000 Telegraph Road, Suite 5
Brownstown Township, MI 48134
(734) 692-9200
Bryan@Yaldoulaw.com

*Attorneys for Plaintiffs*